**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GROENEVELD TRANSPORT EFFICIENCY, INC., ) | CASE NO. 1:10 CV 702 |
| ) | |
| ) | JUDGE DONALD C. NUGENT |
| Plaintiff, ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| LUBECORE INTERNATIONAL, INC., ) | AND ORDER |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law or, in the Alternative and Jointly, for a New Trial(ECF #242). On October 20, 2011, after a six day trial, the twelve member Jury returned a unanimous Verdict for the Plaintiff Groeneveld Transport Efficiency, Inc. ("Groeneveld") against the Defendant, Lubecore International, Inc., ("Lubecore") on Plaintiff's claim of Trade Dress Infringement under the Lanham Act, 15 U.S.C. § 1125(a) and awarded damages in the amount of $1,225,000.00.[1] The Jury's Answers to Interrogatories and Verdict were as follows:

**INTERROGATORY NUMBER 1**

Do you find that Plaintiff Groeneveld proved by a preponderance of the evidence that its Trade Dress (the external shape and appearance of the pump, including logo and color) are

---

[1] Groeneveld asserted six claims at trial. Counts 1 through 3 alleged that Lubecore committed infringement of the "trade dress" of Groeneveld's product; unfair competition; and false advertising and misrepresentation of quality in violation of the Lanham act, 15 U.S.C. § 1125(a). Count 4 asserted a claim for violation of Ohio's Deceptive and Trade Practices Act, and Counts 5 and 6 asserted claims for unfair competition and tortious interference with contractual or business relationships under Ohio common law. At the close of all evidence, Defendant's Motion pursuant to Fed. R. Civ. P. 50 was granted as to Counts 2, 3, 4, 5, and 6. The Court reserved ruling as to Count 1 and denied the motion after the Jury returned its Interrogatory Answers and Verdict.

non-functional?

__Yes__ **(insert in ink "YES" or "NO" according to your findings)**

**INTERROGATORY NUMBER 2**

Do you find that Plaintiff Groeneveld proved by a preponderance of the evidence that its Trade Dress (the external shape and appearance of the pump, including logo and color) is distinctive in the marketplace, that is has it acquired secondary meaning?

__Yes__ **(insert in ink "YES" or "NO" according to your findings)**

**INTERROGATORY NUMBER 3**

Do you find that Plaintiff Groeneveld proved by a preponderance of the evidence that there is a likelihood of confusion in the minds of consumers of EPO pumps as to the source of Defendant Lubecore's EPO pump?

__Yes__ **(insert in ink "YES" or "NO" according to your findings)**

**VERDICT FOR PLAINTIFF**

We the jury, being duly impaneled and sworn, find by a preponderance of the evidence in favor of the Plaintiff Groeneveld on Plaintiff's claim of Trade Dress Infringement under the Lanham Act, 15 U.S.C. § 1125(a) and against Defendant Lubecore and award damages, if any, in the amount of $1,225,000.00 (Insert in ink an amount from $0 to whatever the evidence requires.)

The Jury returned the next day on October 21, 2011, to hear arguments of counsel and the Court's instructions on the issue of willfulness. The Jury retired in deliberation and returned the

following unanimous Answer to Interrogatory No. 4:

### **INTERROGATORY NUMBER 4**

Do you find that Plaintiff Groeneveld proved by a preponderance of the evidence that Lubecore willfully infringed Groeneveld's Trade Dress in violation of the Lanham Act?

__Yes_____ **(insert in ink "YES" or "NO" according to your findings)**

The Court accepted the Jury's Answers and Verdict and entered Judgment in favor of Plaintiff Groeneveld and against the Defendant Lubecore on Plaintiff's Trade Dress Infringement claim under the Lanham Act and awarded Plaintiff $1,225,000.00 in damages.

### **STANDARD OF REVIEW**

Fed.R.Civ.P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law. The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion." Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 2537, p. 347 (footnote omitted). That is, judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); see also Fed. Civ. R.50(b). "The

Court is not free to weigh the parties' evidence or to pass upon the credibility of witnesses. Nor may the Court substitute its own judgment for that of the jury.... When the evidence would permit reasonable minds to differ on the issues decided, a motion for judgment as a matter of law must be denied. In short, every effort must be made to uphold the verdict if reasonably possible." *In re Scrap Metal Antitrust Litigation*, No. 1:02 CV 0844, 2006 WL 2850453, at *8 (N.D. Ohio Sept. 30, 2006).

The application of Fed. Civ. R.59 is similarly limited, and does not permit a court to set aside a jury verdict "simply because different inferences and conclusions could have been drawn or because some other results are more reasonable." *J.C. Wyckoff & Assoc., v. Standard Fire Insurance Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). Under Fed. R. Civ. P. 59(a), "a new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."

When reviewing a motion for a new trial, a court "should indulge all presumptions in favor of the validity of the jury's verdict." *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996)(*citing Ragnar Benson, Inc. v. Kassab*, 325 F.2d 591, 594 (3rd Cir. 1963)). A jury verdict must be upheld so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983).

Nevertheless, on a motion for new trial, as contrasted with a motion for judgment as a matter of law, the judge may set aside the verdict even though there exists substantial evidence to support it. *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). However, the district court "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous

4

result." *Brooks*, 86 F.3d at 588. The Sixth Circuit has explained that a "seriously erroneous result" would be evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion *i.e.*, the proceedings having been influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996).

Moreover, procedural errors, such as a mistake regarding the admission or exclusion of evidence or an error made in instructing the jury, cannot be the basis for ordering a new trial unless the error affects a substantial right of a party. See Fed. R. Civ. P. 61. Thus, a motion for a new trial will not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir.2004)(citing *Erskine v. Consol. Rail Corp.,* 814 F.2d 266, 272 (6th Cir.1987)) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 514 (6th Cir.1998).

## DISCUSSION

Defendant asserts that there was insufficient evidence for the issues of functionality, secondary meaning, and likelihood of confusion to go to the Jury. Alternatively and jointly, Defendant asserts that the jury's findings on these issues is against the greater weight of the evidence. Finally, Defendant seeks judgment as a matter of law, or alternatively and jointly, a

new trial regarding Plaintiff's damages.

Moving first to Defendant's argument regarding functionality, Lubecore asserts that Mr. Van der Hulst provided all of Plaintiff's testimony regarding non-functionality and that his testimony failed to show that the appearance of the Groeneveld pump is non-functional. The issue of non-functionality is a factual determination. See *Fuji Kogyo Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 681 (6th Cir. 2006). As such, if there is any record evidence, including any reasonable inferences that support it, the jury's non-functionality finding cannot be displaced, even if there is also competing evidence. Testimony that the appearance of a product is unrelated to its function is sufficient evidence of non-functionality. See *GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006) (Plaintiff's vice president of product development's testimony that the appearance and styling of Plaintiff's Humvee was "not essential to the use or purpose of the vehicle" supports finding of non-functionality.)

Here, the testimony of Mr. Van der Hulst, if believed, would support a finding that the external appearance of the EPO pump was non-functional. As such, there was sufficient evidence to send the question to the jury. Further, upon review of the testimony and parties' briefings the Court finds that there is a sufficient evidentiary basis for a reasonable jury to find for Plaintiff on the issue of non-functionality.

Next, Defendant asserts that there was insufficient evidence to submit the issue of secondary meaning to the Jury, or alternatively and jointly, asserts that Defendant is entitled to a new trial because the verdict is against the weight of the evidence. The Jury was charged that they should evaluate the following seven factors in order to determine if Plaintiff's trade dress had acquired secondary meaning: (1) direct consumer testimony; (2) consumer surveys; (3)

exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *GMC*, 428 F. 3d at 418. Groeneveld need not put on evidence of all of these factors and no single factor is determinative. Except for consumer surveys, Plaintiff submitted evidence of all of the remaining factors, that if believed, could support the Jury's finding of secondary meaning. As such, it is inappropriate for the Court to resift and re-weigh the evidence to overturn the Jury's findings.

Defendant also asserts that there was insufficient evidence to submit the issue of likelihood of confusion to the Jury or, alternatively and jointly, that the Defendant is entitled to a new trial because the verdict was against the weight of the evidence. The Jury was instructed that in determining whether a likelihood of confusion exists, the following factors should be considered: (1) strength of the plaintiff's trade dress; (2) relatedness of the goods, (3) similarity of the trade dress; (4) evidence of actual confusion; (5) commonality or similarity of marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the trade dress; and (8) likely expansion of the product line. No single factor is dispositive; rather, the factors serve as a guide to determine whether there is a likelihood of confusion. *Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir. 1982). Moreover, in the Sixth Circuit, evidence of intentional copying may raise a presumption of confusing similarity. *See Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997); *S.H. Leggitt Co. v. Fairview Fittings & Mfg.*, 2004 U.S. Dist. LEXIS 30248, *27 (W.D. Mich. Apr. 22, 2004); *Udi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006). "'The *presence* of intent [to copy] can constitute strong evidence of confusion. *See, e.g., Homeowners Group,* 931 F.2d at

1111. The converse of this proposition, however, is not true: the *lack* of intent by a defendant is "largely irrelevant in determining if consumers likely will be confused as to source.'" *Big Daddy's Junky Music Stores,* 109 F.3d at 287 *(*quoting *Wynn Oil I,* 839 F.2d at 1189 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986)); *see also Champions Golf Club,* 78 F.3d at 1121 (holding the same).

Throughout the trial, Plaintiff's counsel and witnesses emphasized their belief that Defendant intentionally copied everything about Groeneveld's EPO pump, including its trade dress. Several witnesses, including Mr. White, Mr. Eisses, Mr. DeCleene, and Mr. Wapenaar, testified that the exterior shapes, silhouettes, outlines and designs are the same and that any differences are undetectable. While Lubecore's label and color are different than Groeneveld's, there is sufficient evidence from which the jury could have concluded that the products were confusingly similar despite the difference in markings given the testimony regarding corporate mergers and acquisitions in the industry; the fact that many pumps bear multiple company names; and, the fact that labels may not be the brand identifiers relied on in this industry.

Moreover, there was evidence to support the jury's finding in favor of Plaintiff based on the *Frish* factors. Plaintiff's introduced testimony regarding the strength of its trade dress, that its pump was recognized on sight by its external appearance, shape and look and that the products of the parties are "related" as they perform the same function. There was ample evidence regarding the similarity of the looks or trade dress of the Lubecore and Groeneveld pumps and the fact that both parties used the same marketing channels and approaches, *i.e.*, internet, trade shows, targeting the same purchasers and using independent distributors. Finally, Plaintiff's witness testified that there was potential for growth in the United States and posited the theory

that consumers actually take less care and time when confronted with "Defendant's knock-offs" because they mistakenly feel reassured about the quality because the Lubecores look exactly like the Groenevelds. While Defendant asserts that its buyers are sophisticated and know what they are purchasing, it was up to the jury to weigh this testimony. Again, there was sufficient evidence to submit the issue of likelihood of confusion to the Jury and the Jury's verdict was not against the greater weight of the evidence.

Finally, Defendant seeks judgment as a matter of law, or alternatively and jointly, a new trial regarding Plaintiff's damages. Specifically, Defendant asserts that there was a lack of evidence of a causal link to Lubecore's infringement and that Groeneveld's damages theory was speculative. Defendant contends that in a Lanham Act case, in order to receive damages a plaintiff must first prove that some damages were the "certain result of the wrong." (ECF #242 at 22 citing *Broan Mfg.Co., Inc. v. Associated Distribs., Inc*., 923 F.2d 1232, 1235 (6th Cir. 1991).[2] Defendant contends that Plaintiff's damages calculations assumed that Groeneveld would have made every sale Lubecore made. Further, Defendant claims that there was no evidence of even a single sale that Plaintiff lost because a confused customer bought a Lubecore pump and thought he was buying a Groeneveld pump. Defendant points to the testimony of Dean Osborne who testified that he knew in advance of his purchase that he was getting a Lubecore pump. While Mr. Osborne was not confused about the maker of the grease pump he bought, he testified that he bought the Lubecore because it looks identical to the Groeneveld and probably operates the same too. (Trial transcript (Ex. K to ECF #272 at 37)) Thus, Plaintiff asserts that Mr. Osborne's

---

[2] The Defendant did not submit this standard to the Court in its proposed jury instructions, and indeed, did not address damages at all. Further, Defendant did not object to the jury instructions on damages that were given.

testimony, and the reasonable inferences that even defense counsel drew from it, evidences causation because it demonstrates that the copied look of Defendant's product swayed a customer to buy it. It was well within the Jury's province, then, to infer that other purchasers were similarly influenced in their purchasing decisions.

Further, Defendant contends that Plaintiff's damages calculation assumed that Groeneveld would have made every sale Lubecore made.  While Gail Wilson testified that there is "a long list of things that can influence the sales numbers," Defendant contends that she did not make any adjustments to her damages theory for any factor that could have influenced lost sales other than Lubecore as a new market entry. Plaintiff responds that Ms. Wilson applied Groeneveld's contribution margin to Defendant's sales of products to some of the independent distributors identified in PX 103–sales that she thought would otherwise have passed through the Plaintiff-Groeneveld entity. Plaintiff also notes that Ms. Wilson also testified by video tape played at trial that one of the reasons for the decline in sales was Groeneveld's loss of a full quarter of sales to its long-time independent distributor Fuel Systems, Inc., and to others, as well.

Moreover, Plaintiff argues that it had also sought disgorgement of Lubecore's profits. Evidence of Defendant's gross sales came in a document prepared by Lubecore, PX 103. Lubecore complains that PX 103 contained projected sales numbers for part of 2010 and all of 2011, which exceeded Lubecore's actual sales numbers.  Although Plaintiff had sought actually numbers for months, Defendant produced actual sales numbers two days before trial. (DX X) To recover Defendant's profits, Plaintiff needed only to prove Defendant's gross revenues; Defendant had the burden of proving its claimed deductions and any sales it contended should be excluded from the award. 15 U.S.C. § 1117(a).  The evidence (admittedly outdated) of

Defendant's gross receipts introduced by Plaintiff stated that the gross revenues in 2009 and 2010 were about $1.3 million. Plaintiff argues that the Jury was not required to credit Defendant's "new" sales figures, nor was it required to accept Defendant's claimed deductions or exclusions. See *Artmark-Chicago, Ltd. v. E. Mishan & Sons, Inc*., 1992 U.S. Dist. LEXIS 12572 (N.D. Ill. Aug. 12, 1992). Thus, Plaintiff concludes that the record evidence supports the Jury's damages award – either the amount of Groeneveld's lost revenues or the amount of Defendant's profits, or as some combination of both; or as including other compensable injuries such as Groeneveld's corrective and investigatory costs, its lost executive and employee time, its lost business opportunities, its future lost profits, harm to its reputation or goodwill, or others. (ECF #256 at 22-23). The general verdict form that the Jury completed did not ask the Jury to identify the basis of, or allocate, their damage award. It could consist of Groeneveld's lost revenues or Defendant's profits, or some other combination. As Defendant did not object to the form of the Interrogatories and Verdict, and in fact requested a general verdict form, the form of the verdict can not now be impugned.

Based upon a review of the parties' briefs, exhibits and the trial record, the Court finds that there was evidence in the record that supports the Jury's damages award. It was for the Jury to sift through the evidence, weigh its credibility and make a determination, both as to causation and amount. Defendant's are not entitled to judgment as a matter of law or to a new trial based upon the Jury's finding of liability or the damage award.

The last issue raised by Defendant is its argument that Lubecore is entitled to a new trial because it was prejudiced by the testimony of Groeneveld's untimely disclosed experts and by the damages testimony of Gail Wilson. Moving first to the expert witness issue, Defendant

11

asserts that Plaintiff violated Rule 26(a)(2)(D)(i) by failing to disclose expert witnesses at least 90 days before the date set for trial. Under Rule 37(c)(1), "a party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Defendant complains that Plaintiff identified two expert witnesses a month before trial, and disclosed their reports two weeks before trial.  Nevertheless, the Court permitted them to testify over Defendant's objections.  Apparently relying on its belief that the Court would exclude the experts' testimony, Defendant refused to depose Plaintiff's proposed experts. While Plaintiff clearly missed the disclosure deadlines set forth in Rule 26, as did Defendant with respect to all of its witnesses, Defendant has not articulated any basis on which the Court could find that the admission of their testimony was not harmless. Defendant does not argue at all about any alleged prejudice caused by the testimony of Ms. Wolfe.  Rather, the only mention of harm expressed by Defendant is that "the mere existence of expert witnesses lends credence to the illusion of a valid claim." Such a generic claim of harm does not support exclusion of the testimony, especially since review of the trial record shows that the testimony of these expert witnesses did not harm Defendant.

Lastly, Defendant contends that Plaintiff violated Rule 26(a) by introducing a damage calculation through Gail Wilson that was not disclosed to Lubecore during discovery and by failing to supplement its Initial Disclosures with damages calculation, as required by Civ. R. 26(e)(1). Plaintiff responds that its Initial Disclosures informed Lubecore of the types of damages it would pursue including injury to Groeneveld's business and business relationships, including but not limited to loss of good will and diminishment of market share; Groeneveld's

lost profits; Defendant's profits; and dilution of Groeneveld's brand. Plaintiff claims to have supplemented its damages disclosure in a timely fashion because they were made as soon a updated information became available. Plaintiff provided documentation regarding Groeneveld's contribution margin (PX 135) before trial at the same time that Defendant provided its trial exhibit DX X, which was the financial information that Plaintiff had requested through discovery but that Defendant had refused to provide. Both sides argued that the other side was not prejudiced by the timing of the disclosure of these exhibits because the other side had it when they went to trial.[3] Plaintiff notes that Groeneveld's contribution margin is in the same range as Lubecore's and is calculated in the same way. Mr. Eisses, the former head of Groeneveld's North American operations, would be familiar with the calculation.  Moreover, Ms. Wilson performed the damages calculations that Defendant complains of at trial as that was the first opportunity she had, given the terms of the protective order, to review Defendant's claimed gross revenues. While the Jury's damages award was very similar to Ms. Wilson's computation, the Jury may have adopted that number or reached that award in another fashion. Based upon the history of both parties' disclosures over the course of this litigation, Plaintiff's violation of Rule 26 is substantially justified and/or was harmless. Accordingly, Defendant is not entitled to a new trial on this basis.

## CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative and Jointly, for a New Trial (ECF #242) is denied.

---

[3] This action has been rife with discovery disputes and motions to compel and repeated motions for sanctions and to exclude evidence as a discovery sanction.  It is ironic that Defendant complains about Plaintiff's late disclosures given its own repeated refusal to comply with discovery rules and orders.

13

**IT IS SO ORDERED.**

                                                              /s/*Donald C. Nugent*
                                                              **DONALD C. NUGENT**
                                                              **UNITED STATES DISTRICT JUDGE**

**DATE:** April 4, 2012